UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

---

MATTHEW RAETHER
11 Parkview Lane
Watertown, WI 53094

    Plaintiff,

    v.                    Case No: 16-CV-0952

WISCONSIN DEPARTMENT OF
WORKFORCE DEVELOPMENT
819 North 6th Street, Room 723
Milwaukee, WI 53203

    and

MADISON AREA ELECTRICAL
JOINT APPRENTICESHIP COMMITTEE
2730 Dairy Drive, Suite 102
Madison, WI 53718

    Defendants.

---

## COMPLAINT

---

    1.    This court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as this case involves a federal question under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e *et seq.*, as amended, and the Americans with Disabilities Act Amendments Act of 2008 ("ADAAA"), 42 U.S.C. § 12101 *et seq.*, as amended.

    2.    Defendant DWD maintained an office within the Eastern District of Wisconsin at all times material herein, and venue is therefore proper in this District pursuant to 28 U.S.C § 1391(b).

3. Plaintiff, Matthew Raether, is an adult male resident of the State of Wisconsin residing at 11 Parkview Lane, Watertown, Wisconsin 53094.

4. Defendant, Wisconsin Department of Workforce Development ("DWD"), was, at all times material herein, a governmental agency of the State of Wisconsin with a principal office located at 819 North 6th Street, Room 723, Milwaukee, Wisconsin 53203.

5. Defendant, Madison Area Electrical Joint Apprenticeship Committee ("JAC"), was, at all times material herein, a nonprofit organization with a principal office located at 2730 Dairy Drive, Suite 102, Madison, Wisconsin 53718.

6. On or about August 8, 2011, Plaintiff signed an Apprenticeship Contract with Defendant DWD, sponsored by Defendant JAC.

7. Plaintiff's Apprenticeship Contract stated that the contract "may be suspended or cancelled by the sponsor, for good cause, with due notice to the apprentice and a reasonable opportunity for corrective action, and with written notice to the apprentice and to the Department."

8. On or about August 19, 2011, Plaintiff became officially recognized by the State of Wisconsin as an apprentice.

9. Plaintiff has the disability of depression, with which he was diagnosed on September 26, 2012.

10. During his participation in the Defendants' apprenticeship program, Plaintiff became friends with another apprentice in his group, Ellicia Pluemer (female), and they spent time with other apprentices socializing in groups.

11. On or about January 17, 2013, Plaintiff had knee surgery on his ACL, MCL, and meniscus, which required him to take three prescription pain medications and be out of work for

2

several days.

12. Defendants placed Plaintiff's apprenticeship contract on unassignment on January 17, 2013.

13. On or about January 29, 2013, Plaintiff attempted suicide by overdosing on his prescription pain medications as a result of his depression. During his suicide attempt, he contacted two other apprentices (one male, Fernando, and one female, Ellicia Pluemer) from Defendants' program and requested help from them.

14. After Plaintiff's suicide attempt, Milwaukee Area Technical College head counselor Geraldo Vilacruz met with and pressured Plaintiff to withdraw from the classroom instruction program part of his apprenticeship.

15. Plaintiff made clear to Vilacruz in that meeting that his suicide attempt had been a result of his depression combined with the prescription pain medications he was taking for his healing post-knee surgery.

16. Vilacruz told Plaintiff in that meeting that his pressure to withdraw related to Pluemer "being dramatic" after Plaintiff contacted her during his suicide attempt.

17. Neither Defendant ever suspended Plaintiff from MATC as they claimed.

18. Defendants were aware of Plaintiff's suicide attempt, his depression, and his contact with the other apprentices during his attempt because Plaintiff informed them of it in a meeting on or about February 21, 2013.

19. During the February 21, 2013 meeting, Defendant JAC "informed [Plaintiff] that he would not be able to return to assigned status until he has been released 100% from his physician(s) and is able to perform all of the tasks of an Electrical Construction Apprentice without restrictions."

3

Case 2:16-cv-00952-LA   Filed 07/20/16   Page 3 of 10   Document 1

20. Plaintiff returned to the apprenticeship program on or about June 5, 2013 and Defendants reassigned his contract to active status; he was assigned to work as an apprentice at Krantz Electric, located at 2650 North Nine Mound Road, Verona, Wisconsin 53593.

21. Vilacruz re-enrolled Plaintiff in MATC's program in August 2013 with a different Apprenticeship Group, because his previous group members had progressed in coursework that he missed because of his medical leave.

22. Vilacruz told Plaintiff not to talk to Ellicia Pluemer, but he did not say why or tell Plaintiff that he could not contact anyone else in his prior apprenticeship group.

23. In approximately October 2013, Clay Tschillard, Coordinator/Training Director, Apprenticeship & Training Office, told Plaintiff that he was now in a different class group, but he never advised Plaintiff to avoid contact with his prior group.

24. By on or about January 15, 2014, Plaintiff learned that all apprentices received a letter regarding a required meeting in the Wisconsin Dells, but he did not receive this letter.

25. Plaintiff asked Timothy Anhalt, Assistant Training Director, Apprenticeship & Training Office, if he needed to attend the meeting in Wisconsin Dells. Anhalt said yes, Plaintiff did need to attend the meeting.

26. At the time he told Plaintiff to attend the meeting, Anhalt knew or should have known that Plaintiff was in a different group from the other apprentices attending the meeting in Wisconsin Dells.

27. On or about January 24, 2014, following Anhalt's direction, Plaintiff went to the designated pick-up spot for the bus to the apprentices' meeting in Wisconsin Dells.

28. When he arrived, Plaintiff's name was not on the sign-in sheet for the bus.

29. Robert Doyle, Local 159 Business Manager/Financial Secretary and Union

4

Representative to Defendants, told Plaintiff to sign the back of the sheet, because his name was not on the sign-in sheet, and he told Plaintiff "everything will be fine."

30. When he arrived in Wisconsin Dells for the meeting, Plaintiff went to join his current group, which was also attending the meeting.

31. Before Plaintiff could attend the meeting, Doyle pulled Plaintiff aside and told Plaintiff he was not supposed to be at the meeting.

32. Tschillard drove Plaintiff back to Madison before he could attend the meeting or learn any more about why he had been excluded from the meeting. Tschillard refused to answer Plaintiff's questions about why he could not attend the meeting after Anhalt and Doyle told him to attend.

33. While at the January 24, 2014 meeting, Plaintiff briefly saw Pluemer but did not speak to her or interact with her in any way.

34. On or about February 21, 2014, Defendant BAS sent Plaintiff an Intent to Cancel Notice based on "Apprentice violation of sponsor's printed work rules/policies. Harassment."

35. On February 24, 2014, Defendant JAC sent Plaintiff a letter stating that "At its February 20, 2014 meeting, the Madison Area Electrical (Construction) Joint Apprenticeship Committee (JAC) voted to recommend that the Bureau of Apprenticeship Standards issue a 20-Day Notice of its Intent to Cancel your Apprenticeship Contract, **due to your violation of the Committee's written rules and procedures (Sexual Harassment Policy).**" (emphasis in original).

36. On or about February 24, 2014 and February 26, 2014, Jerry Noel, Plaintiff's foreman at Krantz Electric, informed Plaintiff that neither he nor Scott Krantz, partial Owner of Krantz Electric, were aware that Plaintiff had broken any of their work rules, nor were they

5

Case 2:16-cv-00952-LA   Filed 07/20/16   Page 5 of 10   Document 1

aware of any complaints against him.

37. On or about March 3, 2014, Plaintiff had a meeting with Tschillard and Anhalt.

38. During the meeting, Plaintiff inquired about Defendant BAS's Intent to Cancel letter, but Tschillard and Anhalt would not tell him what work rules he had broken or what the specific allegations of harassment against him were other than the fact that there was a complaint of harassment and intimidation by another apprentice, which was witnessed by a representative of Defendant JAC.

39. Anhalt lied at the meeting and denied telling Plaintiff to be at the meeting at the Wisconsin Dells.

40. Tschillard and Anhalt referenced Plaintiff's "situation" multiple times during the meeting and stated that Plaintiff needed to be treated differently than other apprentices. Plaintiff interpreted those statements as references to his depression and suicide attempt.

41. Tschillard and Anhalt explained that Plaintiff's response to the Intent to Cancel would be brought to Defendant JAC at its next meeting and JAC would be asked for action.

42. Plaintiff was told he was welcome at Defendant JAC's meeting only if invited.

43. Plaintiff was then told that Defendant BAS would make its determination based on Defendant JAC's recommendation.

44. Plaintiff was told to speak with Debbie Schanke with any questions or concerns because she was the liaison between Plaintiff and Defendant JAC.

45. No one at either Defendant ever told Plaintiff what the allegations against him were, and neither Defendant ever asked Plaintiff for his statement or otherwise investigated the unfounded allegations of Pluemer regarding Plaintiff.

46. Plaintiff attempted to contact Debbie Schanke, Defendant BAS's Apprenticeship

Training Representative, on or about February 28, 2014, March 3, 2014, March 4, 2014, March 5, 2014, and March 6, 2014, without receiving a response.

47. Plaintiff objected to Defendant BAS's Intent to Cancel in writing on March 7, 2014, in a timely fashion.

48. On or about March 21, 2014, Defendant BAS sent Plaintiff a Cancellation Notice for "Apprentice violation of sponsor's printed work rules/policies. Harassment."

49. The Cancellation Notice informed Plaintiff that "Any party to this Apprentice Contract may appeal this decision, in writing, to the following address: Director, Bureau of Apprenticeship Standards, P.O. Box 7972, Madison, WI 53707."

50. Plaintiff's last day of work at Krantz Electric was March 24, 2014.

51. On or about March 25, 2014, Plaintiff spoke with Doyle, who told him that Defendants were trying to avoid a sexual harassment lawsuit from Pluemer. Doyle informed Plaintiff that it did not matter what he said because it would not affect the outcome.

52. On or about April 17, 2014, Plaintiff filed a formal appeal with the Director, Bureau of Apprenticeship Standards, stating that there was a lack of due process and investigation under Wis. Stat. § 106.01(5p) and requesting a hearing under Wis. Stat. § 106.01(9).

53. On or about May 28, 2014, Plaintiff sent another letter to the Director, Bureau of Apprenticeship Standards inquiring about his appeal.

54. Plaintiff had no communication from Defendant BAS regarding his request for a hearing.

55. On or about July 11, 2014, Plaintiff filed an administrative charge of sex and disability discrimination against Defendant DWD, designated ERD Case No. CR201402179 and

cross-filed with the Equal Employment Opportunity Commission as EEOC Case No. 26G201401117C.

57. On or about July 11, 2014, Plaintiff filed an administrative charge of sex and disability discrimination against Defendant JAC, designated ERD Case No. CR201402180 and cross-filed with the Equal Employment Opportunity Commission as EEOC Case No. 26G201401118C.

57. The EEOC issued a Notice of Right to Sue on both EEOC Case No. 26G201401117C and EEOC Case No. 26G201401118C on April 21, 2016, which Plaintiff received on April 25, 2016.

58. Plaintiff has exhausted his administrative remedies and satisfied all conditions precedent to bringing this action.

## FIRST CLAIM FOR RELIEF—ADAAA FAILURE TO ACCOMMODATE

59. Plaintiff realleges and thereby incorporates paragraphs 1-58 above.

60. Defendants failed to accommodate Plaintiff's disabilities in enforcing its *per se* illegal "100% healed" policy and refusing to allow him to continue the apprenticeship program "until he has been released 100% from his physician(s) and is able to perform all of the tasks of an Electrical Construction Apprentice without restrictions," in intentional and/or reckless disregard of his federally protected rights under the Americans with Disabilities Act Amendments Act of 2008, 42. U.S.C. 12101 *et seq*.

61. As a result of Defendants' intentional discrimination, Plaintiff has suffered damages in the form of loss of wages and other employment benefits and insurance, emotional distress, pain and suffering, loss of reputation, loss of educational and career opportunities, and other damages to be shown at trial.

8

## SECOND CLAIM FOR RELIEF—ADAAA DISCRIMINATION

62. Plaintiff realleges and thereby incorporates paragraphs 1-61 above.

63. Defendants intentionally discriminated against Plaintiff in the terms and conditions of his employment and terminated him on the basis of his disabilities in intentional and/or reckless disregard of his federally protected rights under the Americans with Disabilities Act Amendments Act of 2008, 42. U.S.C. 12101 *et seq.*

64. As a result of Defendants' intentional discrimination, Plaintiff has suffered damages in the form of loss of wages and other employment benefits and insurance, emotional distress, pain and suffering, loss of reputation, loss of educational and career opportunities, and other damages to be shown at trial.

## THIRD CLAIM FOR RELIEF—TITLE VII SEX DISCRIMINATION

65. Plaintiff realleges and thereby incorporates paragraphs 1-64 above.

66. Defendants terminated Plaintiff's employment because of his sex, male, in intentional and/or reckless disregard of his federally protected rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, as amended.

67. As a result of Defendants' intentional sex discrimination against him, Plaintiff has suffered damages in the form of loss of wages and other employment benefits and insurance, emotional distress, pain and suffering, loss of reputation, loss of educational and career opportunities, and other damages to be shown at trial.

**WHEREFORE**, Plaintiff respectfully requests that this Court:

1. Order Defendants to make Plaintiff whole by providing appropriate back pay, front pay and/or reinstatement, compensatory damages, punitive damages, pre-judgment and post-judgment interest, and reimbursement for other benefits and expenses in an amount to be shown at trial;

2. Grant to Plaintiff his attorney fees, costs and disbursements as provided by 42 U.S.C. §2000e-5, 42 U.S.C. § 12205, and all other applicable statutes and provisions; and

3. Grant to Plaintiff whatever other relief this Court deems just and equitable.

Dated this 20th day of July, 2016.

> HEINS EMPLOYMENT LAW PRACTICE LLC
> Counsel for the Plaintiff
>
> *s/ Janet L. Heins*
> Janet L. Heins, State Bar No. 1000677

HEINS EMPLOYMENT LAW PRACTICE LLC
1001 West Glen Oaks Lane, Suite 103
Mequon, Wisconsin 53092
(262) 241-8444 voice
(262) 241-8455 facsimile
e-mail: jheins@heinslawoffice.com